JENNIE CAHILL, Respondent, *v.* INECTO, INC., Appellant.

First Department, February 8, 1924.

**Negligence — action to recover for injuries to head caused by hair dye — defendant advertised hair dye as harmless — dye was applied in accordance with directions — defendant failed to prove that ingredients of hair dye were harmless — judgment in favor of plaintiff affirmed.**

In an action to recover damages for injuries suffered by the plaintiff as the result of the application of hair dye manufactured and sold by the defendant, the judgment in favor of the plaintiff should be affirmed, since it appears that the hair dye was advertised by the defendant as harmless for use where the skin was in a healthy condition; that the dye was applied to the plaintiff's hair by a hairdresser in strict accordance with the directions given by the defendant; that shortly thereafter the plaintiff's head began to itch, and the following day the itching increased and her face began to swell and continued to swell until she was unable to see, and she was confined for several weeks in a dark room, and that ulcers formed on her head and finally her hair and eyebrows fell out; that the plaintiff's scalp was in a healthy condition prior to the application of the hair dye; and that the defendant did not offer any evidence to show that the ingredients in the hair dye were harmless, and produced witnesses to testify only that they had used the hair dye without serious results.

APPEAL by the defendant, Inecto, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 16th day of April, 1923, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 3d day of April, 1923, denying the defendant's motion to dismiss the complaint and for a new trial made upon the minutes.

First Department, February, 1924.    [Vol. 208

*Stephen M. Bell* [*Matthew Spalletta* of counsel], for the appellant.

*Harry Krauss,* for the respondent.

DOWLING, J.:

This action was brought to recover damages for personal injuries sustained by plaintiff by reason of the applications to plaintiff's head of a hair dye manufactured by defendant, known as " Inecto Rapid," which it advertises and represents to the general public as suitable for use as a hair dye and for application to the head as such. It is alleged in the complaint that, by reason of the carelessness, recklessness and negligence of the defendant herein, the said " Inecto Rapid " was inherently dangerous to the skin, and if applied thereto would cause rashes, burnings, itches and other physical pains, and would otherwise mar and blemish the skin of the person using the same.

It is further alleged that plaintiff, relying on the representation of defendant that said preparation was suitable for use as a hair dye, caused the same to be applied to her head, whereupon she " suffered the rashes, burnings, itches and other physical pains, and mental sufferings, and her skin became marred and blemished, and by reason thereof, the plaintiff was and still is unable to attend to her regular course of duties and was compelled to and did and will further be compelled to incur expenses of an assistant in the performance of her household duties which plaintiff had theretofore performed, and was compelled to and did undergo expenses in an effort to be cured of such injuries, and upon information and belief that such injuries are of a permanent nature."

It is further set forth that " the foregoing injuries were caused solely and exclusively by reason of the carelessness, recklessness and negligence of the defendant, and without any negligence on the part of the plaintiff contributing thereto."

The proof shows that plaintiff called upon a hairdresser for the purpose of having her hair dyed; that the hairdresser recommended to her a dye which she had bought from defendant, at its establishment, called " Inecto Rapid," composed of two bottles which she applied to plaintiff's hair according to the directions accompanying the same. She followed the instructions, and used in all four bottles, two each marked A and B, one of which is the dye, the other some preparation of peroxide, to fix the dye. The directions for use furnished by defendant are that the contents of bottle A is first to be poured into a glass or porcelain saucer, then those of bottle B, and the whole mass is to be mixed together. There is no claim that the hairdresser did not follow the directions, or that she improperly applied the dye. The application began

at two P. M. and was completed in an hour or an hour and a half. About nine o'clock on the same evening plaintiff's head began to itch, and the following day the itching increased, and towards evening her face began to swell. The pain traveled down both sides of her face as far as her chest. The following day she called on her physician, who prescribed a salve for her head and a lotion for her face, but the swelling continued to increase very rapidly for a week, so that her eyes could not be opened. She was confined to a darkened room for five weeks, for four of which she could not lie down. Ulcers formed, accompanied by constant burning, and finally her hair and eyebrows fell out, being practically burned off.

Plaintiff testified that she had never suffered from any skin or scalp disease or trouble in all her life. The hairdresser testified that plaintiff's head was not ulcerated or swollen when she applied the dye. Plaintiff's physician testified that she was perfectly well before she had her hair dyed; that his diagnosis verified that fact, and that her ailments were the result of the application of the dye; that there could be no other cause for the condition he found, save the application externally of a chemical agent.

The defendant produced hairdressers, who had used the dye in their business without injurious result, and two physicians, whose testimony did not aid its case, the purpose in calling them being apparently to prove that plaintiff had some predisposition or idiosyncrasy, making her susceptible to hair dye, but they absolutely failed to make such proof.

The pamphlet issued by defendant advertising its " Inecto Rapid " contains no warning of any kind that its use is dangerous. On the contrary, it sets forth that it is " positively safe for use on all healthy skins, but not for use with sores, eczema, or predisposition to skin eruption. When in doubt apply test recommended by Drs. Sabourana & Rousseau supplied gratis on application."

For aught that appears, it may be used by any one, and does not require the services of a professional hairdresser to apply it, for the same pamphlet states that it is " endorsed and recommended by fifteen thousand Royal, Court and leading Continental hairdressers.— Has received over 20,000 unsolicited letters of praise from users in all parts of Europe.— Requires no cleaning or washing of hair before application; is easy to apply; needs no drying; gives always the results you desire when used in accordance with directions; " and further that, " these simple instructions, if carefully followed, will insure you the same success and satisfaction that are being enjoyed by thousands of women in Europe to-day."

13

First Department, February, 1924. [Vol. 208

We have then a case of a woman, in perfect health, who goes to a hairdresser to have her hair dyed. The latter recommends defendant's preparation, which she has bought from it and which she applies exactly as directed by the defendant's printed instructions. This preparation defendant represents to be absolutely harmless, except under conditions not here present. Plaintiff then suffers painful and serious injuries as the direct result of the dye thus applied, which her physician testifies, in effect, is the competent producing cause of those injuries, and the sole possible one.

This, in my opinion, made out a sufficient *prima facie* case for plaintiff, and adequately sustained the burden of proof she had to assume.

It was then the defendant's duty to at least meet this proof by adequate explanation of how the injuries were in fact received. It completely failed to show that plaintiff had any of the physical conditions which made the use of the dye inadvisable for her. It could then have gone further and shown directly by some one in its employ or by a chemist that its preparation contained no chemical or other agent by which plaintiff's injuries could possibly have been occasioned. But it carefully refrained from attempting to make any such proof. It produced five hairdressers who had used the dye on customers without injury. It produced two physicians whose testimony proved nothing. Its only other witness was an employee, who testified that the preparation was made in ten-gallon quantities in one large vat; that it was then put into smaller containers and then into small bottles through rubber tubes; and who further testified that a million and a half of the small bottles had been sold in the past two years. But this witness knew nothing of the composition of the dye, nor of its ingredients. The proof of the non-harmful character of the ingredients used in this dye was solely within defendant's control. It had represented that its composition was harmless. Such proof was required to be made by it if it hoped to meet plaintiff's case. Not having attempted to do so, it is difficult to see how the jury could have found otherwise than for plaintiff.

The judgment and order appealed from should be affirmed, with costs.

Clarke, P. J., Finch, McAvoy and Martin, JJ., concur.

Judgment and order affirmed, with costs.