PAULINE KARR, Appellant, v. INECTO, INC., Respondent.

First Department, June 3, 1927.

Negligence — action for injuries suffered by plaintiff through action of
hair dye coming in contact with finger — hair dye was purchased from
defendant which represented dye to be harmless — plaintiff used dye
as directed — evidence shows that condition of finger was due to
infection from chemical used in dye — error to dismiss complaint at
close of plaintiff's case.

This is an action to recover for injuries suffered by the plaintiff. It appears that
the plaintiff purchased hair dye manufactured by the defendant which the
defendant represented to be harmless, and in the use thereof some of the dye
came in contact with plaintiff's right index finger. The plaintiff followed the
directions on the package of dye in every respect. The evidence shows that
the result of the dye coming in contact with plaintiff's finger was to produce an
infection which finally resulted in the finger becoming atrophied and in the loss
of the use thereof, and the evidence also shows that the infection was caused
by a chemical used in the dye and was not the result of a germ. It was error
for the court on the evidence presented to dismiss the complaint at the close
of plaintiff's case.

APPEAL by the plaintiff, Pauline Karr, from a judgment of the
Supreme Court in favor of the defendant, entered in the office of
the clerk of the county of New York on the 22d day of November,
1926, upon the dismissal of the complaint at the close of plaintiff's
case.

*Leo J. Rosett* of counsel [*David Scheinker* with him on the brief;
*House, Grossman & Vorhaus,* attorneys], for the appellant.

*William B. Shelton* of counsel [*Murray Hulbert* with him on the
brief; *Reed, Jenkins, Dimmick & Finnegan,* attorneys], for the
respondent.

McAVOY, J. Judgment was rendered in this case against plaintiff
dismissing her complaint.

The plaintiff sought damages for permanent injuries sustained
to her right index finger, which injury came about through the
use of a chemical product used for hair dyeing which defendant
manufactured and which it represented as a production which
could be safely applied. The product was known as " Inecto-
Rapid." It was used by the plaintiff upon the representation of
defendant that it might safely be applied, and while in such use
a portion of it came in contact with her right index finger which
caused her injuries now sought to be redressed, which are of a
permanent nature.

The plaintiff conducted a so-called beauty parlor on University

avenue in The Bronx and had on numerous occasions shampooed and given facial massages to one of her customers. She had never previously applied this dye to the hair of this customer and had never before used Inecto-Rapid. The customer had had her hair dyed with this preparation on four or five occasions by the defendant at its own place of business. Defendant's process of applying the dye was to shampoo the customer's hair, then apply the dye for twenty minutes, and after the hair had dried to reshampoo it. The dye used was a brownish-colored liquid and was held in small bottles. It was customary in defendant's place of business while applying the dye to wear rubber gloves. Prior to March 31, 1924, the day plaintiff was injured, this customer of plaintiff's bought four bottles of the Inecto-Rapid at defendant's place of business and took them to plaintiff's beauty parlor where she gave them to the plaintiff. In the afternoon of that day the packages containing the bottles of dye were opened. The directions and instructions in the pamphlet contained in the package as to how to mix and use the dye were read and followed by the plaintiff. Together plaintiff and her customer opened the bottles and mixed them according to the instructions. The customer's hair was then shampooed and the dye applied with a brush. The plaintiff wore rubber globes while mixing and applying the dye. She then washed the gloves, removed them, and rinsed her hands. When she came back to the room, she noticed that some of the dye was dripping down the forehead of her customer, and plaintiff wiped these drops from the customer's forehead with a piece of cotton. As she did this, some of the dye got on her index finger. She wiped it with another piece of cotton and again washed her hands with " Lifebuoy " soap, but the brown spot did not wash off. At the time plaintiff wiped the dripping dye from the forehead of the customer, she was not wearing the rubber gloves. Thereafter the plaintiff shampooed her customer's hair again and gave her a facial treatment and a wave. She then went home and attended to her household duties. About two o'clock the following morning she was awakened by a feeling of pain in this right index finger. She saw it had become swollen, and she immediately telephoned a Dr. Uhr, who advised her to bathe it. At one P. M. that day he visited plaintiff and examined her index finger and found that the finger was swollen, and had a deep brownish spot about an inch or so long and little over a half inch wide. He opened the finger with a surgical instrument but found no pus. She was told to apply hot boracic acid solution. On the same evening Dr. Uhr saw her again, when the finger was still swollen and the spot still there. On the following forenoon her condition was unchanged.

Another incision was made and no pus was extracted. For three days this condition persisted without pus showing and the doctor advised the plaintiff to go to a hospital. At Fordham Hospital she was examined by Dr. Nathaniel Uhr, a brother of Dr. Jacques Uhr, who was at that time the house surgeon at the hospital. He found her finger swollen, discolored, very tender, with red lines and inflammation running up the hand, beginning to swell the hand. The doctor diagnosed this condition as synovitis of the right index finger. Dr. Jaynes, a surgeon whom Dr. Uhr assisted, operated under a general anæsthetic, upon the plaintiff's finger, making incisions in the lateral surface of the finger and putting drainage through it to drain out the infection. After this operation three more incisions were made two days later further up along the finger and one in the palm of the hand. Due to the death of the tissue, because of the infection, the tendon of the right index finger sloughed and the tendon drained out.

The plaintiff was confined eleven days in Fordham Hospital, and Dr. Nathaniel Uhr saw her every day and for many days at her home. From October 1, 1924, for a period of a year, she received baking, massaging and electrical treatments from a nurse. The result of this infection and the sloughing of the tendon left the finger atrophied, and the joints between the finger bones in an ankylose or stiff condition, a union between the joints, which was first fibrous and then became bony. This atrophy of the finger is a permanent one. Due to disuse, the finger has atrophied and shrunk about one-half inch. Prior to this application of the Inecto-Rapid dye to the hair of her customer, the plaintiff had no trouble with her fingers of the right hand. This right index finger was in perfect condition. She had never been treated for any infection. Both the Doctors Uhr testified that the infection of plaintiff's finger was not a germ disease, but was chemical and caused by the dye. One said that during the time he treated the patient, there was never any pus, showing that the death of tissue in the plaintiff's finger was caused by some chemical process.

On this proof the learned trial court dismissed the complaint. We rule on this testimony that a *prima facie* case was established.

The rule that we announced in *Cahill* v. *Inecto, Inc.* (208 App. Div. 191) through Mr. Justice DOWLING, is applicable to the facts here. A recital of the holding demonstrates this:

" We have then a case of a woman, in perfect health, who goes to a hairdresser to have her hair dyed. The latter recommends defendant's preparation, which she has bought from it and which she applies exactly as directed by the defendant's printed instructions. This preparation defendant represents to be abso-

lutely harmless, except under conditions not here present. Plaintiff then suffers painful and serious injuries as the direct result of the dye thus applied, which her physician testifies, in effect, is the competent producing cause of those injuries, and the sole possible one.

" This, in my opinion, made out a sufficient *prima facie* case for plaintiff, and adequately sustained the burden of proof she had to assume.   *   *   *

" The proof of the non-harmful character of the ingredients used in this dye was solely within defendant's control. It had represented that its composition was harmless. Such proof was required to be made by it if it hoped to meet plaintiff's case. Not having attempted to do so, it is difficult to see how the jury could have found otherwise than for plaintiff."

We think the judgment was incorrect and should be reversed and a new trial ordered, with costs to appellant to abide the event.

DOWLING, P. J., MERRELL, FINCH and PROSKAUER, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.