CARMINA CARLO vs. CITY OF PITTSFIELD.

Berkshire.   September 24, 1959. — November 2, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Sewer. Municipal Corporations*, Liability for tort, Sewer.  *Negligence*,
Sewer.

Evidence warranted a finding that employees of a city maintaining a
sewer in a street having a downslope to a point beyond a certain house,
upon being called to remedy a clogged condition of the sewer, were
negligent toward the owner of the house in pushing down the clogged
sewage from a point above the house without ascertaining whether
there was any obstruction below the house, whereby, because there
was an obstruction below it, sewage was caused to back up into it.

TORT.   Writ in the District Court of Central Berkshire
dated September 25, 1952.

Upon removal to the Superior Court, the action was tried
before *Nagle*, J.   Following recording of a verdict for the
plaintiff under leave reserved, a verdict for the defendant
was entered.   The plaintiff alleged exceptions.

*James M. Rosenthal*, (*John B. Cummings & Walter E.
Reilly* with him,) for the plaintiff.

*William R. Flynn*, Assistant City Solicitor, (*Maurice B.
Rosenfield*, City Solicitor, with him,) for the defendant.

WILLIAMS, J.   This is an action of tort to recover from the
city damages for personal injury and property damage
caused by the flow of sewage from the city's sewerage system
into the house of the plaintiff at 106 Euclid Avenue.   In her
declaration the plaintiff alleged negligent maintenance of
the sewer and negligence of the city's servants and agents
"in charge."   There was evidence that Euclid Avenue was
a public way in which the city, as part of its sewer system,
maintained a six inch main which was connected with the
houses along the avenue.   It was constructed of tile pipe
with cement connections and laid six feet below the surface

of the street. In the vicinity of the plaintiff's house the street ran substantially north and south with a distinct downslope from its southern terminus at Evelyn Park to a point somewhat north of the house. In this section of the street there were three manholes to the sewer. The most southerly was located near the house of one Martin, at or near Evelyn Park, a second manhole was thirty feet below the first, and a third three hundred eighteen feet down from the second. The plaintiff's house, which was connected with the sewer, was fifty feet above the third manhole.

In the morning of August 18, 1951, the sewer department was notified by Martin of sewerage troubles at his house. The department immediately sent a working foreman and two men to investigate. They opened the first manhole and found it "loaded right to the top with sewage" which was not running down. The foreman testified, "We put our cutter and the wire from that manhole to the next one. It let go the first one and went to the next one, and that one was almost half full. From there we took our wire and put it in the second manhole. . . . We put our rod and cutter through there and we come down to the one that is 318 feet from it." The purpose in putting the wire in the sewer was to get the sewage running. "By putting the wire in, it pushed the sewage by the Carlo house to open the drain."

While the men were working somewhere between the second and third manholes, the foreman received word that "something was happening" at the plaintiff's house. He went there and found that sewage had come up through the toilet on the first floor. Going down to the third manhole he "found that clear, everything had gone right out." In his opinion the sewage had gone into the plaintiff's house.

It could be found that the obstruction or obstructions in the Euclid Avenue sewer were caused by the presence of tree roots. The city presented evidence that the sewer was properly constructed and previous to August 18, 1951, was examined monthly and found to be in working condition. There was no evidence to the contrary.

A municipality is not responsible for damages which accrue to individuals through any defect or inadequacy in the plan of its system of sewers, but is responsible for damages which accrue to individuals through negligence in the construction, maintenance or operation of its system of sewers. *Lobster Pot of Lowell, Inc.* v. *Lowell*, 333 Mass. 31, 33, and cases cited.

Without discussing whether in the circumstances the city could be found negligent in permitting the sewer to be obstructed by tree roots, we proceed to consider the alleged negligence of the city's employees in attempting to clear the sewer. It is difficult, from the record, to determine exactly what they did and the nature of the apparatus which was used. There was no expert evidence. As we understand from the testimony of the foreman, his men were provided with a revolving cutter on a wire which would scrape out the inside of the sewer pipe and with a rod to push the sewage. They apparently went to the point where they were informed there was trouble and there cleaned out the first manhole. When they reached the second manhole, they found it half full indicating a stoppage either there or at some place below. At that point they used both the cutter and the rod. In the foreman's opinion the use of the rod served to push the sewage farther down and resulted in its backing up into the plaintiff's premises. Apparently there was an obstruction below the plaintiff's house and we think that the use of the rod at the second manhole without ascertaining whether there was such an obstruction could be found to have been negligent.

There was a verdict for the plaintiff recorded under leave reserved. The judge then allowed a motion of the defendant to enter a verdict for it under this leave, and the plaintiff excepted. We think that the exceptions of the plaintiff must be sustained. It is unnecessary to consider her exceptions to the exclusion of evidence on liability since a verdict in her favor was returned.

*Exceptions sustained.*
*Judgment to be entered on the verdict.*