DISTRICT OF COLUMBIA, Appellant,

v.

Marjorie BILLINGSLEY, Appellee.

No. 93–CV–64.

District of Columbia Court of Appeals.

Argued June 14, 1994.

Decided Nov. 27, 1995.

Othello G. Jones, Jr., Washington, for appellee.

Before WAGNER, Chief Judge, and SCHWELB, Associate Judge, and GALLAGHER, Senior Judge.

WAGNER, Chief Judge:

The District of Columbia (District) appeals from a $40,000 judgment in favor of appellee, Marjorie Billingsley, entered following a jury trial. Billingsley initiated the action against the District for property damages caused by the District's negligence in making repairs in the street and/or main sewer line which resulted in sewage flowing up into her property.[1] The District argues that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict because Billingsley failed to prove (1) the applicable standard of care for maintenance and repair of a municipal sewer system or (2) that the District's negligence proximately caused the sewage backup. We conclude that Billingsley failed to establish a *prima facie* case of negligence against the District. Therefore, we reverse.

## I.

Billingsley testified at trial that during December 1989, she owned and resided in a home at 4220 Southern Avenue, S.E. At that time, she used the basement of her home as a showroom and meeting room for her businesses. In that connection, she stored Amway products,[2] clothing, jewelry, and accessories in the basement. On December 14, 1989, at about 7:00 p.m., she noticed three inches of "cloudy looking" water on her basement floor and called the D.C. government's Department of Water and Sewer Emergency. About two hours later, two District employees arrived and broke up the blockage in the sewer line under the street, which allowed

James C. McKay, Jr., Assistant Corporation Counsel, with whom John Payton, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

1. Billingsley initially filed a complaint against Flippo Construction Company (Flippo), a contractor, alleging that it negligently caused the main sewer line to back up while repairing the street. She amended the complaint, adding the District as a defendant. Flippo filed a third-party complaint against Faith Construction Co., Inc. (Faith) for indemnification or contribution, alleging that Faith, which was making repairs in the vicinity of Billingsley's property, was the cause of the sewer backup. Prior to trial, Billingsley dismissed the complaint against Flippo, and Flippo dismissed against Faith.

2. Billingsley described the Amway products as items used for "home care, personal, car, security, janitorial supplies and all kinds of consumable as well as non-consumable items."

the water to drain out.[3] After the repairs were made, Billingsley asked the repairmen if the situation would occur again, as she used her basement for her business. The repairmen assured her that the problem had been corrected and that she could resume normal use of the basement. The workmen took a report. The leak caused extensive damage to the basement and the products which Billingsley kept there. She directed someone who performs maintenance work to put the basement back in order.

On the morning of December 23, 1989, Billingsley again found sewage coming out of the same drain in her basement floor as before. This time, it was at least five or six inches deep. She called the emergency number again, and District employees responded that afternoon. By the time they arrived, the water and sewage had damaged her property, but the liquid had drained out of the basement. Billingsley painted and had the floors, stairs and carpet cleaned.

Finally, on December 31, 1989, at about 10:30 p.m., a dark discolored substance, which came first from the drain and then from the toilet, after Billingsley tried to cover the drain, flooded Billingsley's basement. Floating in the approximately one foot of liquid were dead rodents and pampers. Billingsley called the water department immediately and several times thereafter. She succeeded in getting a fireman, who was attending to a similar problem at a neighbor's home, to come and turn off the gas and electricity. The water and sewage continued to pour in until it was about four feet deep. About 3:00 a.m., someone from the Sewer Department arrived, and the District's employees worked in the street and broke up the blockage at approximately 4:00 a.m. They worked on the problem until 8:00 a.m. the next morning, and they returned at approximately 4:00 p.m. that afternoon to clean up, which included shoveling the refuse from her basement. Again, the sewage caused damage to Billingsley's property.[4] Billingsley also testified about the wholesale cost of the items damaged on each of the dates and the other expenses incurred as a result of the sewer backup.

Cuthbert Braveboy, the Chief of Inspection of the Sewer Inspection and Maintenance Division of the DPW, testified that this department is the agency exclusively responsible for operating and maintaining the sewer system. He testified that although the sewers are designed to be self-cleaning, commencing about 1986, the department began cleaning them once every eight to ten years with a "jet vac," a machine with water hoses and a vacuum pipe used to remove any debris (e.g., grease, roots, solids and household items flushed into the system) from the sewer. Braveboy testified that prior to December 1989, although the department maintains such records, there were no records of complaints about the sewer system in the 4200 block of Southern Avenue, S.E. He testified that the sewage leak in appellee's basement was caused by brick and gravel in the sewer line and that such materials are not normally expected to be found in a sewer line. He explained that brick and debris could get into the sewer in a number of ways, including as the result of a plumber making a connection or someone performing work around the sewer "or a plumber doing some work in someone's home and being careless or mistakenly the brick or gravel could go through that person's line into the sewer." Such work, he said, would not be performed solely by the District. Braveboy also testified that sometimes debris could enter through missing manhole covers, although he recalled no such complaints on or about December 14, 1989. Braveboy stated that he did not know what caused the blockage specifically on January 1, 1990, but he did "know that there was some brick and gravel in the sewer as [he] testified to before that caused blockages."

The witness stated that the city has a preventive maintenance plan, but he did not know the last time an inspection was made in Billingsley's block prior to the first incident.

---

3. The District's employees were wearing uniforms of the Department of Public Works (DPW).

4. Alexina Wiggs, who lived in the house adjoining appellee's, testified that four and one-half inches of water came into her basement on December 31, 1989. Mabel Lee, another neighbor, testified that eight inches of sewage water came into her basement at that time.

He further testified that the crew sent for repairs would normally clean out any debris they found, but he did not know what they would do to prevent further backups. He further testified that he did not know how the debris got into the sewer system.

Upon the close of the plaintiff's evidence, the District moved for a directed verdict on the grounds that Billingsley failed to demonstrate by expert testimony the applicable standard of care and causation and that there was no evidence regarding causation. The trial court granted the District's motion for a directed verdict with respect to damages caused by the sewer backup on December 14, 1989, on the theory that the District had no advance notice. Billingsley does not challenge that ruling. However, the trial court denied the motion with respect to the occurrences on the other two days.

The jury returned a verdict against the District for $40,000. The District filed a motion for judgment notwithstanding the verdict (j.n.o.v.), a new trial or remittitur, all of which the court denied. The trial court stated as its reasons the following:

> There was more than sufficient evidence from which the jury could reasonably conclude that District employees were negligent in clearing the blocked sewer line, that they knew or should have known that, unless properly cleared, that raw sewage would enter plaintiff's basement, and that plaintiff reasonably relied upon the assurance of District employees that it was safe to use her basement to her detriment. The verdict on liability was thus well founded.

This appeal followed.

## II.

The District argues that it was entitled to a judgment as a matter of law because Billingsley failed to present a *prima facie* case of negligence; therefore, the trial court erred in denying its motion for judgment as a matter of law. Specifically, the District ar-

gues that Billingsley failed to present sufficient evidence to establish the applicable standard of care or that the District's breach of the standard of care proximately caused her damages. Billingsley contends that the evidence was sufficient to establish the District's liability on a negligence theory.

### A. *Standard of Review*

In reviewing the trial court's denial of a motion for judgment notwithstanding the verdict, this court applies the same standard as the trial court does in ruling on a motion for a directed verdict. *Etheredge v. District of Columbia,* 635 A.2d 908, 915 (D.C.1993). Thus, we must view the evidence in the light most favorable to the non-moving party, who is entitled to every reasonable inference. *Id.; Washington v. Washington Hospital Center,* 579 A.2d 177, 181 (D.C.1990); *see Spain v. McNeal,* 337 A.2d 507, 508 (D.C. 1975). Only when the evidence, viewed in that light, permits but one reasonable conclusion as to the proper judgment, may the motion be granted. *Etheredge,* 635 A.2d at 915; *Washington Welfare Ass'n, Inc. v. Poindexter,* 479 A.2d 313, 315 (D.C.1984). On this record, we hold that this is one of those exceptional cases in which the motion should have been granted.

### B. *Proof of Negligence*

It has long been recognized that the District may be liable for negligence in the performance of a proprietary function such as maintenance of a sewer system.[5] *Gee Gee Realty Corp. v. District of Columbia,* 200 A.2d 378, 379 (D.C.1964); *Bannagan v. The District,* 2 Mackey 285, 286, 13 D.C. 285 (1883); *see also City of Tucson v. Hughes,* 23 Ariz.App. 350, 352, 533 P.2d 561, 563 (1975); *Carlo v. City of Pittsfield,* 339 Mass. 624, 161 N.E.2d 757, 758 (1959). In order to recover from the city for the operation or maintenance of the sewer system, a plaintiff must establish that the city's negligence proximately caused the harm. *Id.; see*

---

5. In *Aguehounde v. District of Columbia,* 666 A.2d 443 (D.C.1995), we observed that

[s]trictly speaking, the common law terms distinguishing actions by a municipality which were immune from liability from those actions

which were not, were "governmental" and "proprietary" respectively. Over time, however, the terminology has evolved to the "discretionary" versus "ministerial" formulation.... 666 A.2d at 447 n. 6.

*generally Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 199 (D.C.1991); *District of Columbia v. Freeman,* 477 A.2d 713, 716 (D.C.1984). As in any negligence case, the plaintiff bears the burden of proving the applicable standard of care, defendant's deviation from that standard, and a causal relationship between the violation and plaintiff's injuries or damages. *Beard,* 587 A.2d at 199; *District of Columbia v. Peters,* 527 A.2d 1269, 1273 (D.C.1987); *see also Bell v. Jones,* 523 A.2d 982, 987 (D.C.1986).

■ The District argues that it was entitled to judgment as a matter of law because Billingsley failed to establish a *prima facie* case of negligence. It points out correctly that proof that Billingsley's basement was flooded by a sewer backup is insufficient to establish negligence. *See Jones v. Safeway Stores, Inc.,* 314 A.2d 459, 460 (D.C.1974) ("The mere happening of an accident does not impose liability or permit an inference of negligence.") (quoting *Paylor v. Safeway Stores, Inc.,* 225 A.2d 312, 314 (D.C.1967) (quoting from *Brown v. Alabama Foods, Inc.,* 190 A.2d 257 (D.C.1963)); *see also Hughes v. District of Columbia,* 425 A.2d 1299, 1302 (D.C.1981). The District argues that Billingsley failed to prove the standard of care for maintaining or repairing the sewer system or that the District caused the blockage or failed to clear it once notified of the problem. It also contends that the trial court properly ruled that the doctrine of *res ipsa loquitur* was not a viable theory of proof under the facts presented.

### 1. *Res Ipsa Loquitur*

■ The trial court ruled that *res ipsa loquitur* was not available to establish negligence. This doctrine permits an inference of negligence

> where plaintiff establishes that: (1) an event would not ordinarily occur in the absence of negligence; (2) the event was caused by an instrumentality in defendant's exclusive control; and (3) there was no voluntary action or contribution on plaintiff's part.

*Marshall v. Townsend,* 464 A.2d 144, 145 (D.C.1983) (citations omitted). All three elements must be established in order for the doctrine to apply. *Id.* In this case, the trial court concluded that the first two elements for application of the doctrine had not been shown. Specifically, the court observed that Billingsley's own evidence proved that the sewer was not in the exclusive control of the District and that other people can throw objects into the sewer which might cause a blockage. The Chief of Sewer Inspection and Maintenance, who was called as a witness by Billingsley, testified that brick and gravel, which caused the blockage, was not ordinarily found in sewer lines and that other people have access to the lines. He testified that a plumber performing work in someone's home or making a connection around the sewer could carelessly cause brick and gravel to be deposited in the sewer line. This evidence tends to dispel any notion that the sewer line was within the exclusive control of the District and that the backup would not occur except for the District's negligence. Therefore, we agree that the evidence was insufficient as a matter of law to permit an inference of negligence under the *res ipsa loquitur* doctrine on these facts. *See id.* Billingsley does not contend otherwise.

### 2. *Standard of Care*

■ The District argues that Billingsley failed to offer evidence of the applicable standard of care for the maintenance of a sewer system. Moreover, it contends that this subject requires proof by expert testimony. Expert testimony is required to prove negligence when "the subject in question is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson." *Peters, supra,* 527 A.2d at 1273; *Meek v. Shepard,* 484 A.2d 579, 581–82 (D.C.1984). Billingsley argues that no expert testimony was required, as the evidence of the cause of the backup and the District's response to it are matters within the realm of common knowledge. *See Beard, supra,* 587 A.2d at 200. "Where negligent conduct is alleged in a context which is within the realm of common knowledge and everyday experience, a plaintiff is not required to adduce expert testimony either to establish the applicable standard of care or to prove that the defendant failed to adhere to it."

*Id.* (citations omitted). We examine first the nature of the alleged negligent conduct relied upon as a basis for Billingsley's claim.

Billingsley's theory of negligence is that the District had a duty to maintain the sewer system, including the duty to use reasonable care to keep it free from obstruction and to remove any obstruction upon reasonable notice. She contends that having been notified about the blockage on December 14, 1989, the District was obligated to keep the line free from further obstructions and to prevent the backups which occurred on December 23 and 31, 1989. According to Billingsley, essentially these facts, along with any reasonable inferences, are sufficient to prove liability without expert testimony. We disagree.

The evidence showed that there were no reports of any problems with the sewer prior to Billingsley's report on December 14, 1989. It showed further that each time a backup occurred, the District was called, and the problem was abated, the first time for ten days, and the second time, for eight days. There is also no evidence that the District failed to respond promptly or even that it failed to take corrective actions consistent with any required standard of care. In order for Billingsley to prevail on this record, it would have to be reasonable for the jury to infer from this evidence that the District did not remove the bricks and debris after each incident and that those same bricks and debris remained in the system and caused the subsequent incidents. Such an inference would be highly speculative, particularly considering the immediate abatement of the problem, the length of the intervals between each of the backups, and the testimony about the various outside sources from which such debris could enter the sewer system. The jury is not permitted to engage in such mere speculation or conjecture. *See Jones, supra,* 314 A.2d at 460–61.

Billingsley chose not to call as a witness Alford Brown, the foreman of the sewer investigation crew, who went to her home at least once in connection with the sewer problem, and who might have shed some light on what they found in the sewer each time and what the District did in response to the situation.[6] The only witness who Billingsley presented to testify about any actions which the District took or failed to take each time that a blockage was reported was Braveboy, the Chief of Inspection of the Sewer Inspection and Maintenance Division of DPW. However, Braveboy had no personal involvement in the performance of the work which eliminated the blockage on each of the three dates involved in Billingsley's complaints. In responding to Billingsley's counsel's question concerning whether or not the District's employees had cleaned out all the debris that they found in the system the first time they went out, Braveboy testified:

> Well, normally they would clean out all that they see.

However, in response to a follow-up question by the court, Braveboy admitted that he really did not know. There is no way of knowing from the evidence whether the District was negligent in correcting the earlier problem or whether subsequent blockages resulted from bricks and gravel being injected again into the sewer by known or unknown individuals after the District corrected the situation on December 14th.[7] The evidence, even viewed in the light most favorable to Billingsley, would not allow the jury to conclude reasonably that the District failed to repair or negligently repaired the sewers on or about December 23rd and 31st and that its negligence proximately caused each of the backups. Billingsley's argument that the District is liable for its failure to alleviate permanently the cause of the sewer backup must fail for want of factual support.

---

6. Alford Brown was identified as a witness by the District in a Joint Pretrial Statement filed by the parties (including the dismissed parties). All parties reserved the right to call witnesses identified by any other party. Brown's responsibilities were elicited during testimony at trial.

7. Braveboy testified that bricks and gravel, which are not customarily found in sewers, could enter as a result of plumbers and others working around the sewer. We note, that although not a part of the testimony at trial, two contractors, who were allegedly performing work in the area at the time of the backups, were dismissed from the action prior to trial.

### 3. *Expert Testimony*

Under the circumstances, we need address only briefly the District's argument that expert testimony is required to prove the standard of care for the proper maintenance of a sewer system and causation. There are likely aspects of this specialty which are too technical to be within the common knowledge of laypersons, for example, whether it was within the standard of care for the District to rely to some degree upon a self-cleaning sewer system or to use a "jet vac" to clear out the blockage. Such evidence might be best developed through expert testimony. *See Beard, supra,* 587 A.2d at 200; *see also Peters, supra,* 527 A.2d at 1273 (expert required to establish standard of care for training police officers to deal with mentally disturbed persons or those under the influence of drugs); *Freeman, supra,* 477 A.2d at 719 (whether a painted crosswalk is sufficient to render an intersection reasonably safe requires expert testimony). However, any expert's opinion must be based upon evidence found in the record. *District of Columbia v. Barriteau,* 399 A.2d 563, 569 (D.C.1979). In this particular case, there was scant evidence concerning exactly what the District did or failed to do in inspecting or clearing the sewer, although the evidence showed that the problem was corrected. Therefore, whether the expert would have had a sufficient factual basis for forming an opinion is somewhat doubtful. In any event, Billingsley failed to introduce sufficient evidence, expert or otherwise, to establish that it was the District's negligence which proximately caused her damages.

For the foregoing reasons, we conclude that Billingsley failed to establish a *prima facie* case of negligence against the District. Therefore, the District was entitled to a judgment as a matter of law. *See Etheredge, supra,* 635 A.2d at 915; *Poindexter, supra,* 479 A.2d at 315. Accordingly, we reverse and remand with instructions to vacate the judgment and enter judgment for the District.

*Reversed and Remanded.*