HELEN M. COWHIG *vs.* JOSEPH CAFARELLI.

Suffolk.   October 3, 1945. — November 1, 1945.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Negligence*, Hairdresser.

Evidence warranted a finding of negligence on the part of the proprietor of a hairdressing establishment through the application of a "wrong" and harmful "solution" to a customer's hair in the course of administering a new method of treatment.

TORT.   Writ in the Superior Court dated July 12, 1943.

The case was tried before *Higgins*, C.J.   It was alleged in the declaration that the defendant did business as Kilby Beauty Shop in Boston.

In this court the case was submitted on briefs.

*E. S. Farmer*, for the defendant.

*J. J. O'Neill*, for the plaintiff.

DOLAN, J.   This is an action of tort to recover compensation for personal injuries alleged to have been sustained in the circumstances hereinafter set forth.   The jury returned a verdict for the plaintiff, and the case comes before us on the defendant's exception to the denial of his motion for a directed verdict in his favor.

The only question presented is whether the evidence was sufficient to support the verdict.   There was evidence as follows: The defendant was the proprietor of the Kilby Beauty Shop, and at the time the plaintiff was injured was in control of the business carried on in the shop and of the way and manner of its conduct.   The plaintiff had been a customer of the shop for over nine years prior to March 13, 1943, on which day she visited the shop by appointment to have her hair dressed by a "heat wave" with the electrical appliance that had been used on other occasions in performing such a service for her.   Arriving at the shop, the defendant's employee, one Rachlow, the operator, informed her that she had a new "no heat cold wave."   The plaintiff

replied that she would prefer the heat wave, but the opera-tor said that the proposed treatment was newer but more expensive and that the plaintiff would "like . . . [it] better." The plaintiff consented. The operator arranged the plaintiff's hair, which was abundant and of fine texture, on different spools and applied a liquid substance by patting it on the hair. The plaintiff informed the operator that her head felt "numb and cold." The operator replied that "that was the general result of the preparation." The process took about three hours, and at its conclusion the operator held up her hands and said that "her hands were all split from the acid that was used and she had to go out and tape her fingers one at a time." The operator stated that this was the first time that she had used the prepara-tion. About five days later the plaintiff ran her hand through her hair and "it came right out by the roots, in bunches." She telephoned to the operator, and as a result visited the shop and asked the operator whether she had "told" the defendant. The operator replied that she had, and the defendant came into the shop and in his presence the opera-tor said "We used the wrong solution. . . . We had three solutions and we used the wrong one on your hair," that "she had three solutions for particular types of hair, coarse, fine, and something else . . . [she did not] recall." The defendant said "all right, we will give you some Breck shampoos" and "it will take care of it." The operator then gave the plaintiff a "Breck" shampoo. In the process the plaintiff's hair was "coming out in good sized bunches . . . the top of her head was perfectly bald." No charge was made for this shampoo. The defendant said that "it certainly would not happen again because they had taken the solution out." The plaintiff's hair kept falling out for five or six weeks, and the bald spots existed for about a year. On April 17, 1943, the plaintiff consulted a physician who administered "lamp treatments" in that month and at other times up to September of that year. Then new hairs were coming in on the top of the plaintiff's head but the scalp still showed through. On February 24, 1943, the operator had attended a demonstration of the cold wave

process at the place of business in Boston of the distributor of the preparation in question, and an order for the preparation was placed with the distributor from which the defendant received four different solutions, one for fine hair, one for coarse hair, one for medium hair, and one for over-bleached hair. Following the complaint of the plaintiff, the operator called at the office of the distributor and as a result a representative of the "Turban Wave" called on her and told her not to use any more of the fine solution. She used none of it thereafter.

The defendant was bound to exercise the ordinary skill and ability of persons engaged in the hairdressing business practising in Boston. *Barnett* v. *Roberts,* 243 Mass. 233, 236. Upon the evidence most favorable to the plaintiff, the jury could have found properly that the preparation used by the operator had not been used by her before and that nevertheless, when warned by the plaintiff that her head felt numb and cold, the operator stated that that was the general result of the preparation; that upon the conclusion of the work the operator's hands were split and bleeding as a result of the "acid" in the preparation; that in the presence of the defendant, who did not demur, the operator subsequently admitted that she had used the wrong solution (see *Barnett* v. *Roberts,* 243 Mass. 233, 236); and that the negligence of the defendant in the use of the wrong solution, and that a harmful one, was the cause of the injuries suffered by the plaintiff rather than some other cause not disclosed by the evidence. See *Thomas* v. *Spinney,* 310 Mass. 749, 751–752, and cases cited. The present case is close in its facts to *Barnett* v. *Roberts,* 243 Mass. 233, and is governed by that case as well as in principle by such cases as *Gavin* v. *Kluge,* 275 Mass. 372, and *Dragan* v. *Artiste Permanent Wave Co.* 308 Mass. 32. See also *Pappas* v. *Desmarais,* 310 Mass. 826; *Pearl* v. *Wm. Filene's Sons Co.* 317 Mass. 529.

*Exceptions overruled.*