Matilda Ravo et al., Respondents, *v.* Jay Lido, Doing Business as Jay's Cut & Swirl Studio, Appellant.

Second Department, December 24, 1962.

*Donald A. Mead* (*Thomas Grimes* of counsel), for appellant.

*Jacobs & Rubin* (*Milton D. Jacobs* and *Isaac Rubin* on brief), for respondents.

Christ, J. The basic question presented is whether the doctrine of *res ipsa loquitur* is applicable where the injured plaintiff claims to have sustained personal injury as the result of a permanent hair-wave treatment administered to her in defendant's beauty parlor by a machineless method known as the "cold wave" process. Involved in that question is the issue whether the lotion or lotions used in said process proximately caused the

injury. There appears to be no authoritative reported adjudication on the subject in this State.

The female plaintiff testified that shortly after 9:00 A.M. on February 27, 1960, defendant's employee, one Burt, first attempted to create a wave in her hair by applying with a cotton dab "some lotion" to the hair, and then by putting the hair "up in curlers." This was done "a section" of hair at a time. After an interim of 15 minutes, Burt applied to the hair another liquid characterized as a "neutralizer." He then removed the curlers and rinsed the hair. The effort failed; plaintiff's hair remained "straight." With plaintiff's consent, Burt then repeated the treatment; and this time he succeeded in achieving a wave. The duration of each treatment was about half an hour; and during each the lotion ran down from plaintiff's hair and over her face.

Concerning the second treatment, plaintiff testified that the liquid went "all over" her; that "the smell was so strong" that she remarked about it to Burt, but that he told her not to worry; that "he had [used] too much lotion;" that repeatedly she wiped the liquid from her face; that she had "a burning sensation * * * all around" her head; and that, at the conclusion of the second treatment, she sat under a "dryer."

Plaintiff further testified that she left defendant's establishment at 1 o'clock in the afternoon, and that in the evening of the same day she began to have "burning sensations" around her temple, head, earlobes and scalp, accompanied by itching in all such parts.

Plaintiff's physician, who treated her at stated times for about a month after she obtained the permanent hair wave described her condition as an inflammation of the scalp; a swelling and scaling in the area of the left ear; a swelling of both eyelids, and a rash on the hairline, with accompanying pain. Plaintiff testified also that previously (about twice a year) she had had "cold waves" administered to her hair, and that on none of such prior occasions had the liquid ever come down over her as it did this time.

On the issue of proximate cause, plaintiff's physician further testified that he had "an idea as to what" was meant by the term "cold wave;" that, although he did not know the brand of lotion that had been used, he had "had experience before," "it's a chemical treatment;" "people get reactions from them;" he had "seen it happen before, and we know it happens;" and "we can tell from the character of the rash that this was definitely a toxic contact dermatitis;" that, although there are many things which could have caused plaintiff's

condition as he observed it, there was in his opinion "only one cause" for the trauma. In support of his opinion, plaintiff's doctor testified that "we have no history of anything else having happened"; that not everybody gets the same reaction to a cold-wave lotion; and that the cause of plaintiff's condition was not an allergy "in that sense of the words". The doctor also testified that it normally takes 12 to 24 hours for definite signs of reddening, swelling and itching of the skin to develop; and probably longer than 24 hours for the scaling of the skin to appear.

Defendant, in his testimony, furnished the trade name of the cold-wave lotion that had been used by his employee. Defendant testified that, in the 2½ years prior to the injury to plaintiff, about 200 "cold waves" had been given in his shop with that lotion and that none of the customers thus treated had ever suffered a head condition such as that described by plaintiff.

At the close of plaintiffs' case, the Trial Justice denied defendant's motion to dismiss the complaint; and, at the close of the entire case his ruling was the same. In his instructions to the jury, the Trial Justice expounded the *res ipsa* doctrine. He charged that the doctrine permits an inference of negligence; and that it may be invoked where "direct evidence of negligence is absent or not readily available * * * provided it is probable that the accident could not have occurred if reasonable care was exercised, and that the person charged with negligence had control of the agency causing the injury." Exception to the instruction was duly taken; and the jury returned a verdict in favor of the plaintiffs. In our opinion, the instruction was erroneous and constituted reversible error.

Where application of a chemical cosmetic is followed by personal injury of the type that sometimes results from the use of such cosmetics, nevertheless, in the absence of proof, it may not be said that necessarily, and to the exclusion of all other possible causes, the application of the cosmetic was the cause of the injury. Causally, the injuries could have been related to toxicity of the chemical in question (see *Cahill* v. *Inecto, Inc.,* 208 App. Div. 191; *Karr* v. *Inecto, Inc.,* 247 N. Y. 360; *Fein* v. *Bonetti,* 307 N. Y. 682); to an allergy of the subject person (see *Karr* v. *Inecto, Inc., supra*; *Sanders* v. *Clairol, Inc.,* 2 A D 2d 857); to the use of improper methods in the process of applying the chemical upon the subject person (*Barrett* v. *Lazzara,* 3 A D 2d 982); or to such person's contact with other products capable of bringing about the same injurious effect (see *Karr* v. *Inecto, Inc., supra*; *Blish* v. *Greco,* 41 N. Y. S. 2d 390).

The basic elements of the *res ipsa loquitur* doctrine were tersely set forth in *Manley* v. *New York Tel. Co.* (303 N. Y. 18, 25–26); and, to the extent necessary we quote therefrom as follows:

" In a *res ipsa* case, as in any other, the plaintiff must establish first and foremost the nature of the instrumentality which is alleged to have caused the injury  \*  \*  \*  and its identity with the defendant  \*  \*  \*. While the actual sequence of events may be established by inference  \*  \*  \*  the circumstances must be such as to indicate negligence, and there must be more than mere speculation, guess or surmise  \*  \*  \*. [The] mere fact that an accident has happened and that injury followed does not give rise to a presumption of negligence on the part of the one charged  \*  \*  \*. The maxim may be invoked only where the ' " circumstances of the case unexplained justify the inference of negligence " '  \*  \*  \*. Whether the rule of *res ipsa loquitur* is to be applied depends upon ' whether, upon " a common-sense appraisal of the probative value " of the circumstantial *evidence*, measured in part by the test of whether it is the best evidence available, inference of negligence is justified '  \*  \*  \*.

" Moreover, if the evidence, such as there is, is capable of an interpretation equally consistent with the presence or absence of a wrongful act, that meaning must be ascribed which accords with its absence ".

There are other helpful expressions on the subject. Thus, a noted writer has said that " the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person " (9 Wigmore, Evidence [3d ed.], § 2509, pp. 382–384). The courts have said: " Not to be ignored as a policy factor is the wide availability which now exists to examine the defendant before trial and [to] establish the circumstances of the accident; nor have the courts ignored the pervasiveness of liability insurance or been unaware of its practical consequences " (*Lo Piccolo* v. *Knight of Rest Prods. Corp.*, 7 A D 2d 369, 373–374, affd. 9 N Y 2d 662); the doctrine " is not intended to relieve one party or the other of the expense of producing proof " (*Curley* v. *Ruppert,* 272 App. Div. 441, 444); and it should be " sparingly " applied, " with caution in peculiar and exceptional cases, and only where the facts and demands of justice make the application essential " (65 C. J. S., Negligence, § 220, pp. 1031–1032).

The rule of *res ipsa loquitur* has been held applicable in other jurisdictions where injuries have followed hair waving by means of electrically heated curling machines applied to the hair (see *Chauvin* v. *Krupin,* 4 Cal. App. 2d 322, 326 [1935]; *Pearson* v. *Butts,* 224 Iowa 376 [1937]; *Pappas* v. *Desmarais,* 310 Mass. 826 [1941]; see 14 A. L. R. 2d 877 *et seq.*). In those cases the injured plaintiffs had experienced heat and had complained to the operator during the course of the treatment. The burden of going forward with the proof was shifted to the defendants on the theory, as stated in *Chauvin* (*supra*), that "the devices * * * were under the exclusive control of the defendants," and the "injury was one which in the natural course of things would not have occurred had the defendants used due care".

There appears to be no reported New York case making a similar determination, except that the doctrine of *res ipsa loquitur* was applied in *Tsamourtzis* v. *Bergdorf Goodman Co.* (201 N. Y. S. 2d 912) where the machine used was one for the removal of superfluous hair. An analogy perhaps may be drawn between that case and the cases involving hair-waving machines. In *Pratt* v. *Edwards & Son* (227 App. Div. 210 [1929]), in which an electrically heated hair-waving machine was used, and in which the decision was to the effect that the injured plaintiff had made out a prima facie case, the emphasis was placed upon actual evidence of "superheating" and heating "for an excessive period." However, for present purposes, it is not necessary to take a position, nor do we, with respect to cases involving heat-producing curling machines.

The case of *Cowhig* v. *Cafarelli* (318 Mass. 632 [1945]) appears to present the first reported appellate court decision in which it was held that the *res ipsa loquitur* rule may be properly invoked to spell out a prima facie case where the attempt to create a hair wave was made by means of a chemical lotion, without the aid of a heat-conducting machine. The later decisions in such cases were put squarely on the basis of the applicability of the *res ipsa loquitur* rule's presumption of negligence (*Grenawalt* v. *Nyhuis,* 335 Mich. 76 [1952]; *Grant* v. *Younker Bros.,* 244 Iowa 958 [1953]; *Morrison* v. *Steppe's Beauticians,* 95 Ohio App. 1 [1953]; *Opsal* v. *Lockhart,* 44 Wash. 2d 415 [1954]; *Weiss* v. *Axler,* 137 Col. 544 [1958]).

The viewpoint of the courts in support of that proposition was tersely stated in a dictum in *Bush* v. *Bookter* (47 So. 2d 77, 79 [La. 1950]), i.e., that the doctrine should apply in such cases "to the same extent as in those cases where mechanical devices are used." In both situations, the court said, the patron "relies

upon the skill and knowledge of the operator who is issuing the beauty treatments to her."

Nevertheless, the force of such rulings in some of those cases is weakened by the fact that evidence of negligence was actually presented. It was claimed in *Cowhig (supra)* that the operator had used "the wrong solution," one so strong that it had split her hands; in *Grant (supra)*, that it was contrary to good practice to fail to use cotton to prevent the solution from going down the patron's face and neck, and to put her under an electrically heated hair dryer while the lotion was still on her; in *Morrison (supra)*, that protective cotton was placed on the patron only after a delay, and that the lotion-laden pads which were used could generate a heat of up to 212 degrees Fahrenheit; and in *Weiss (supra)*, that the administering beautician had failed to follow the lotion manufacturer's manual with respect to "test-curler procedure," and that the liquid substance had been left on the patron's person "too long" or that it had been "too strong," or both.

In this connection, *Patterson* v. *Carpenter* (98 Ga. App. 889 [1959]), another "cold-wave" case, is significant. The trial court nonsuited the injured plaintiff, but the appellate court reversed that determination. The reversal was placed, not on the ground that the *res ipsa loquitur* rule was applicable, but on the ground that factual evidence of negligence had been adduced, namely: that the solution had been left on the plaintiff's hair and scalp for an hour and a half; and that, under the circumstances, the jury could have found such period of time to have been unreasonable.

In our opinion, a situation in which a hair wave is produced by the use of a device such as electrically heated curlers differs materially from one in which no such devices are used and in which only liquid solutions and curlers are utilized. In the former, the heating agent and the appliances are under the operator's exclusive management and control; and, through the senses of sight, smell and touch, or through instrumentation a competent operator should be able to perceive when the heat becomes too intense or is of so high a degree of temperature that its duration ought to be limited. On the other hand, in the latter situation, the opportunity to perceive what effect the chemical agent is having upon the patron is not at all identical. The action of the chemical is stealthy; its development or progress is hidden; and, consequently, the operator is not in complete control. The nature, the affinities and the propensities of its chemical components are clearly not as apparent to him as the properties of heated metal curlers. Accordingly, we do not

agree with those decisions (*supra*) which hold that the *res ipsa loquitur* rule should apply in cold-wave cases to the same extent as in the electrically heated wave cases.

With the electric-heat cases thus removed as a possible bulwark for the application of the *res ipsa loquitur* maxim in a case such as the instant one, we do not believe that, by force of their own nature, the cold-wave cases meet the well-settled requirements for application of the maxim. As has already been observed, cosmetic type injuries can be caused by any one of several agencies. In the absence of proof which eliminates all other possible agencies for which the defendant would not be responsible, the rule of *res ipsa loquitur* is not applicable to establish that the cause was chemical toxicity (*Karr* v. *Inecto, Inc.,* 247 N. Y. 360, *supra; Fein* v. *Bonetti,* 307 N. Y. 682, *supra*).

Moreover, even if such toxicity be established as the cause of the patron's injuries, the beautician is not liable for the injuries where he was not the manufacturer of the product, unless it be also established that he had knowledge of its toxicity (*Sanders* v. *Clairol, Inc.,* 2 A D 2d 857, *supra*). If the injuries were suffered by reason of the patron's allergy to the product or to its ingredients, no right of action exists in favor of the patron on any theory of negligence in manufacture, distribution or use (*Karr* v. *Inecto, Inc.,* 247 N. Y. 360, *supra; Antowill* v. *Friedmann,* 197 App. Div. 230). Of course, if the injuries are traceable to the patron's contact with some other product, certainly no right of action could be based on the application of the cosmetic in question (*Karr* v. *Inecto, Inc., supra; Blish* v. *Greco,* 41 N. Y. S. 2d 390, *supra*). By this, we do not mean to imply that in all such cases the claimant must disprove, by factual evidence, that the injuries were caused by an allergy or by another product. It seems to us that this should depend upon the particular facts and circumstances of each case.

Since the cosmetic type of injury can be the result of causes other than the application of the cosmetic, the patron is not entitled to any recovery unless she presents actual proof that the proximate cause of her injury was the application of the cosmetic, and unless she establishes such fact to the reasonable exclusion of all other possible causes for which the defendant would not be responsible (*Karr* v. *Inecto, Inc., supra; Antowill* v. *Friedmann, supra*). Certainly in the light of the foregoing principles concerning elimination of other possible causes, mere proof of a cosmetic application and of the subsequent development of an injury does not meet the *res ipsa loquitur* test set forth in *Manley* v. *New York Tel. Co.* (303 N. Y. 18, 25–26, *supra*), namely: that " the nature of the instrumentality " and

" its identity with the defendant " must be established; and that " the circumstances must " indicate the defendant's negligence by " a common-sense appraisal " thereof " measured in part by the test of whether " the evidence adduced " is the best evidence available."

Upon the present record, the evidence which plaintiff adduced may not be said to have been the best available. This is apparent from the nature of the proof which was adduced in some of the other cases we have heretofore considered. In this connection, attention may also be directed to *Barrett* v. *Lazzara* (3 A D 2d 982, *supra*), a " cold wave " case. There, in addition to medical proof that the chemical solution used was the competent producing cause of the plaintiff's injury, it was also established that the defendant beautician, with knowledge that plaintiff's hair had been tinted previously, had selected the solution; that, contrary to good practice, he had not made a preliminary curl test; and that the plaintiff had been caused thereafter to sit under a hair dryer for an excessive period of time.

It is true, as plaintiffs here contend, that in one New York case it has been stated that the *res ipsa loquitur* doctrine applies to a cold-wave hair treatment (*Feiderlein* v. *Faiella,* 54 N. Y. S. 2d 114). That case, however, was decided on a motion to vacate a demand for a bill of particulars; and the court, without attempting to analyze the problem, simply accepted as controlling the rulings in some of the out-of-State electric heat wave cases (*Chauvin* v. *Krupin,* 4 Cal. App. 2d 322, 326, *supra*; *Pearson* v. *Butts,* 224 Iowa 376, *supra*; *Pappas* v. *Desmarais,* 310 Mass. 826; see 14 A. L. R. 2d 877).

We have also considered the defendants's claim of error in the trial court's refusal to grant his request for certain instructions to the jury. In the light of our views with respect to the application of the *res ipsa loquitur* doctrine, it is unnecessary to discuss such claimed error.

For the reasons herein stated, the judgment should be reversed. However, in the interest of justice, plaintiffs should be accorded a new trial.

Accordingly, the judgment should be reversed on the law and on the facts, and a new trial granted, with costs to abide the event; the appeal from the order should be dismissed as academic.

UGHETTA, Acting P. J., KLEINFELD, BRENNAN and HOPKINS, JJ., concur.

Judgment reversed on the law and the facts and new trial granted, with costs to abide the event; appeal from order dismissed as academic.