Doris SCOTT, Appellant,

v.

Edna JAMES, et al., Appellees.

No. 97–CV–2042.

District of Columbia Court of Appeals.

Submitted April 6, 1999.

Decided June 24, 1999.

James William Taglieri, Washington, DC, for appellant.

Sharon M. Chambers, Fairfax, VA, for appellees.

Before SCHWELB and REID, Associate Judges, and MACK, Senior Judge.

REID, Associate Judge:

■ Appellant Doris Scott filed a complaint alleging negligence by appellees Sylvia Summer,[1] a hair stylist, and Edna James, the alleged owner and operator of Edna's Beauty Salon in the District of Columbia. The alleged negligence concerned the application of a hair relaxer to Ms. Scott's hair. After the presentation of Ms. Scott's case, the trial court directed a verdict in favor of appellees on the ground that Ms. Scott failed to present expert testimony to show the standard of care in applying the hair relaxer.[2] Subsequently, Ms. Scott filed a motion for a new trial, arguing that expert testimony was not necessary because the trial court should have applied the doctrine of *res ipsa loquitur* to find negligence. The trial court denied the motion for a new trial. We affirm and hold that because the hair relaxer used on Ms. Scott contained chemicals and an understanding as to the proper application of a chemical product to the hair is not within the common knowledge of jurors, the trial court did not err in requiring Ms. Scott to present expert testimony regarding the standard of care for application of the relaxer. Furthermore, we conclude that the trial court did not abuse its discretion in refusing to grant Ms. Scott's motion for a new trial.

## FACTUAL SUMMARY

In her complaint Ms. Scott alleged that "[Ms.] Summer negligently applied and/or performed a hair relaxing treatment" on her which caused her hair to become dry and brittle and fall out. She sought $100,000 for mental anguish and "medical and out of pocket expenses for condition treatments and other procedures in an attempt

---

1. Ms. Summer's last name also appears as "Summers" in the record.

2. The trial court also found that Ms. Scott failed to present evidence sufficient to tie Ms. James to the case under the doctrine of respondeat superior.

to restore her hair to its pre-treatment state, and to improve the appearance of the damaged hair."

At trial Ms. Scott testified that on May 22, 1992, she went to Edna's Beauty Salon and asked for a hair relaxer. At the time she had a "geri curl" and "had just been putting activator in [her] hair."[3] Ms. Summer "examined [Ms. Scott's] hair," informed her it would take a relaxer and "began to proceed with putting the chemical in." Neither the product name nor the chemical content of the hair relaxer used was identified. Ms. Scott said her scalp "started to burn" and asked Ms. Summer to remove the chemical. Ms. Summer told Ms. Scott that "it will be okay" and continued to apply the relaxer. After completing the application, Ms. Summer rinsed out Ms. Scott's hair.

Ms. Scott asserted that the relaxer was not in her hair "a really long time" and after it was rinsed out "[i]t stopped burning as much." However, she continued to "feel some burning sensation" especially when Ms. Summer "started to blow dry" her hair. Ms. Summer "started cutting" Ms. Scott's hair and explained that she had "some damage portion ... and I need to cut that away." Ms. Summer cut approximately "three or four inches all the way around." She then curled Ms. Summer's hair.

About three or four hours later, when Ms. Scott returned home, her hair started "to dry out and get brittle and it started to shed ." Ms. Scott said she had never experienced a problem with dryness. After a couple of weeks, Ms. Scott's hair began to come out in clumps. She went to see another hair stylist, Diane Broadus. Ms. Broadus was not called as a witness and Ms. Scott was not allowed to recount her conversation with Ms. Broadus.

Ms. Scott returned to Edna's Hair Salon around the end of June and "showed them the damage to her hair." At that point, Ms. James agreed "to try to repair" Ms. Scott's hair. Ms. James washed and conditioned Ms. Scott's hair without charge and told her to return in a week. After six to eight weeks, Ms. Scott discontinued the free treatments because she did not see any improvement in her hair.

In an effort to improve her appearance and the condition of her hair, Ms. Scott testified that she purchased and wore wigs, tracks,[4] hair weave,[5] and braids. After trying the above "appliances" for approximately six months each, Ms. Scott had her hair cut really short in 1994 and her hair started to "grow back healthy."

On cross-examination Ms. Scott acknowledged that she did not visit a doctor until 1994, two years and two months after the incident. The doctor whom she saw, Dr. Eileen Blum, prescribed medication for dry skin which Ms. Scott used on her hands. Ms. Scott stated that she had suffered from dry skin "most of [her] life."

Nicole Fletcher, who was living with Ms. Scott on May 22, 1992, and saw her every day, testified that when Ms. Scott returned from the beauty salon her head looked a "mess" and Ms. Scott appeared unhappy. Ms. Fletcher said that Ms. Scott had long hair when she went to the salon but short hair on her return; and confirmed that

---

3. Ms. Scott testified that she informed Ms. Summer that she had put an "activator" in her hair more than six months earlier and asked whether she could "get a relaxer at that point." Ms. Scott appears to suggest that Ms. Summer may have been negligent in applying the relaxer when she knew that an "activator" had been used. No testimony was introduced at trial, however, concerning the content of the "activator" or the relaxer and what happens when the two products come into contact.

4. According to Ms. Scott, "tracks" are human hair which are glued to the scalp by another person. They have to be replaced every two weeks at a cost of around $50.

5. A hair weave is the same as tracks except it is sewn in with the hair instead of glued to the scalp and can be worn a lot longer. Ms. Scott testified that she paid $225 the first time she got hair weave.

Ms. Scott tried various appliances in an effort to get her hair to grow back.

Ms. Scott presented no other witnesses. At the close of her case, defense counsel moved for a directed verdict on the grounds that Ms. Scott had failed to establish the applicable standard of care, a deviation from that standard, and a causal link between the deviation and Ms. Scott's injury. The trial court granted the directed verdict on behalf of Ms. James and Ms. Summer. First, the trial court concluded that Ms. Scott had failed to establish her claim that Ms. Summer "negligently applied and performed a hair relaxing treatment" because she had not provided the standard of care, which required testimony of a licensed cosmetologist since the proper use of a relaxer is not within the knowledge of the average lay juror, evidenced by the fact that cosmetologists and hairdressers have to be licensed in the District to render such services. The court further stated:

> We have before us a case where we do not know the product used. We must speculate as to the nature of the product itself. We must speculate as to how one properly uses it. In order to determine that it was improperly used, we must know how [it's] properly used. I would use the analogy that there is not negligence everytime someone dies on the operating table. Sometimes it just happens.

Second, the trial court concluded that Ms. James "must be released from this matter" since Ms. Scott failed to present evidence to (1) show what steps Ms. James should have taken to repair her hair eight weeks after the damage, and (2) support a finding of negligence based on a respondeat superior relationship between Ms. James and Ms. Summer. Third, the trial court found no basis to Ms. Scott's claim for pain and suffering due to the hair relaxer application. In short, the trial court concluded that Ms. Scott had failed to prove a prima facie case for any of the claims asserted in her complaint.

Ms. Scott filed a motion for a new trial pursuant to Super.Ct.Civ.R. 59 and 60, asserting that the trial court erred in granting appellees' motion for a directed verdict on the ground that she failed to establish, through expert testimony, the standard of care for administration of a hair relaxer. Although she neither pled the doctrine of *res ipsa loquitur* nor raised it during pre-trial proceedings and did not invoke the doctrine in any explicit way during trial, Ms. Scott argued that *res ipsa loquitur* should have been applied and that the jury reasonably could conclude that she "was injured by the negligent application of the hair chemical by defendant Summer and that such injuries do not happen absent negligence." The trial court denied the motion and stated that it could not "consider the matter as *res ipsa* since other factors or conditions may have caused damage to [Ms. Scott's] hair and scalp including her own conduct, or disease." Ms. Scott filed a timely appeal.

## ANALYSIS

Ms. Scott contends on appeal that the trial court erred in directing a verdict in favor of appellees since expert testimony of a standard of care was not necessary in order for her to make a prima facie case of negligence because "the facts of this case are such that a person of ordinary intelligence and experience could easily find that [appellees] breached their duty of care to [her]" and because the doctrine of *res ipsa loquitur* applies.[6]

In response, appellees argue that the standard of care when applying a hair relaxer is beyond the knowledge of the average juror and therefore must be established by an expert. In the alternative, appellees argue that Ms. Scott failed to present sufficient evidence to "lay a proper foundation on which lay persons could

---

6. Ms. Scott does not contend that the trial court erred in directing a verdict in favor of

releasing Ms. James from this lawsuit or with regard to the pain and suffering claim.

have rendered an opinion." In particular, they maintain, Ms. Scott presented no evidence of the name of the product used; "the time period the product should/should not be left in the hair; . . . whether the chemical was rubbed into the scalp or only placed on the hair; the manufacturer's directions for use of the product; how long the product was left in her hair before it was rinsed out; and how long the manufacturer directs the operator/cosmetologist to leave the product in her hair." Appellees also contend that *res ipsa loquitur* does not apply in this case since Ms. Scott failed to identify the product used on her hair.[7]

■ In a case involving a challenge to a directed verdict, "[w]e review the evidence in the light most favorable to [the appellant], 'who must be given the benefit of all reasonable inferences to be drawn from the evidence.'" *Alliegro v. ACandS, Inc.*, 691 A.2d 102, 105 (D.C.1997) (quoting *Abebe v. Benitez*, 667 A.2d 834, 836 (D.C. 1995)). " '[T]he judge is not the trier of fact' on a motion for a directed verdict, and 'must take care to avoid weighing the evidence, passing on the credibility of witnesses, or substituting [his or her] judgment for that of the jury.'" *Id.* (quoting *Abebe, supra,* 667 A.2d at 836) (*Pazmino v. WMATA,* 638 A.2d 677, 678 (D.C.1994)). " 'As long as there is some evidence from which jurors could find that the party has met its burden, a trial judge must not grant a directed verdict.'" *Id.* (quoting *Abebe, supra,* 667 A.2d at 836) (referencing *Marshall v. District of Columbia,* 391 A.2d 1374, 1379 (D.C.1978)). However, "a directed verdict is proper when the jury has 'no evidentiary foundation on which to predicate intelligent deliberation and reach a reliable verdict.'" *Twyman v. Johnson,* 655 A.2d 850, 852 (D.C.1995) (quoting *Pa-*

panicolas v. Group Hospitalization, Inc., 434 A.2d 403, 404 (D.C.1981)).

■ Our review of an order "[denying] a new trial is limited to whether the ruling amounted to an abuse of discretion." *Hummer v. Levin,* 673 A.2d 631, 635–36 (D.C.1996) (citing *Oxendine v. Merrell Dow Pharms., Inc.,* 563 A.2d 330, 333 (D.C.1989) (*Oxendine II* ) (citations omitted)). "[T]he trial court abuses its discretion if it 'applies an incorrect standard of law or grants relief on the basis of findings of fact that are unsupported by the record.'" *Id.* at 636 (quoting *Oxendine II,* 563 A.2d at 334 (citations omitted)).

■ This court has never considered the application of the *res ipsa loquitur* doctrine to a negligence case involving a chemical hair relaxer. In some of our past cases, however, "we have held that 'the elements of *res ipsa loquitur* must be established with some precision. . . .'" *Twyman, supra,* 655 A.2d at 853 n. 6 (quoting *Hailey v. Otis Elevator Co.,* 636 A.2d 426, 429 (D.C.1994)). Moreover, *res ipsa loquitur* "is a powerful doctrine which 'should be applied with caution in a negligence action so that the mere happening of an accident will not permit the inference of a defendant's liability.'" *Hailey, supra,* 636 A.2d at 428 (quoting *Washington Sheraton Corp. v. Keeter,* 239 A.2d 620, 622 (D.C. 1968)); *see also Bunn v. Urban Shelters & Health Care Sys., Inc.,* 672 A.2d 1056, 1060 (D.C.1996) (quoting *Krebs v. Corrigan,* 321 A.2d 558, 559 (D.C.1974)). In addition, "the doctrine 'is not intended to relieve one party or the other of the expense of producing proof. . . .'" *Ravo v. Lido,* 17 A.D.2d 476, 236 N.Y.S.2d 135, 139 (N.Y.App.Div., 2d Dept.1962) (citation omitted).

Based upon our review of the record on appeal, "[w]e agree with the trial court

7. Appellees argue that Ms. Scott has waived her right to rely on the doctrine of *res ipsa loquitur* since "[Ms.] Scott did not argue this in any of her pre-trial pleadings or proceedings (including pre-trial conference)." However, we have suggested previously that where

an appellant relies on an argument in a post-trial motion, we will not conclude that a waiver has occurred. *See W.M. Schlosser Co. v. Maryland Drywall Co.,* 673 A.2d 647, 651 n. 9 (D.C.1996).

that [Ms. Scott] did not present evidence sufficient to allow the inference of negligence from the use of the doctrine of *res ipsa loquitur.*" *Hailey, supra,* 636 A.2d at 427 (emphasis added). Accordingly, the court did not err in directing a verdict in favor of the appellees. Nor did the court abuse its discretion in denying Ms. Scott's motion for a new trial.[8]

One who invokes the doctrine of *res ipsa loquitur* must show that:

"(1) [the occurrence is] of the kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the control (exclusive or joint) of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff."

*Hailey, supra,* 636 A.2d at 428 (quoting *Otis Elevator Co. v. Tuerr,* 616 A.2d 1254, 1258 (D.C.1992)) (quoting *Otis Elevator Co. v. Henderson,* 514 A.2d 784, 785 (D.C. 1986)). " 'At the threshold, plaintiff must demonstrate that the injury ordinarily does not occur when due care is exercised.' " *Id.* (quoting *Quin v. George Washington Univ.,* 407 A.2d 580, 582 (D.C. 1979)). "Thus, it may be invoked only where a lay [person] can infer negligence 'as a matter of common knowledge,' or where expert opinion is presented that such accidents do not occur in the absence of negligence." *Id.* (quoting *Quin, supra,* 407 A.2d at 583–84). Furthermore, "where the plaintiff relies upon 'common knowledge' to invoke the doctrine, the fact that such events do not 'ordinarily' occur

'without negligence' must be based upon a widespread consensus of a common understanding." *Id.* (citing W. Page Keeton, Et Al., Prosser and Keeton On The Law Of Torts § 39, at 244–48 (5th ed.1984)).

We begin with the principle that the doctrine of *res ipsa loquitur* "may be invoked only where a lay [person] can infer negligence 'as a matter of common knowledge,' or where expert testimony is presented that such accidents do not occur in the absence of negligence." *Hailey, supra,* 636 A.2d at 428 (quoting *Quin, supra,* 407 A.2d at 583–84). Ms. Scott insists that application or administration of a hair relaxer is a matter of common knowledge and therefore expert testimony was unnecessary. We disagree.

For analytical purposes, we have identified three categories of earlier hair treatment cases: (1) permanent hair wave with the use of devices such as electrically heated curlers or rods and heat-generated machines;[9] (2) permanent hair wave with the use of machineless processes—usually conditioners or chemical solutions; and (3) permanent hair wave with the use of rods or curlers and a permanent wave compound or solution.[10] These categories enable us to determine better how courts approached the first prong of the *res ipsa loquitur* doctrine whose satisfaction is dependent upon common knowledge or expert testimony: whether "[the occurrence is] of the kind which ordinarily does not occur in the absence of someone's negligence." *Hailey, supra,* 636 A.2d at 428.

Cases falling into our first category— permanent hair wave with the use of de-

---

8. Because of our conclusion, we need not reach the issue regarding Ms. James and the doctrine of *respondeat superior.*

9. In four of the permanent wave cases relied on by Ms. Scott electrical devices and machines were used. In *Glossip v. Kelly,* 228 Mo.App. 392, 67 S.W.2d 513 (1934), plaintiff's hair was wound onto spindles or curlers. She was then "put ... under some kind of an electrical machine to curl her hair." *Id.* at 514. A similar procedure was used in *Givens v. Spalding Cloak Co.,* 228 Mo.App. 169, 63

S.W.2d 819, 821 (1933). Electrically heated curlers, and metal rods with electric energy steam were used in *Chauvin v. Krupin,* 4 Cal.App.2d 322, 40 P.2d 904, 905 (1935), and *Lanza v. Metcalf,* 25 So.2d 453 (La.Ct.App. 1946).

10. These categories are "loose" because the factual summaries in the hair process cases do not always detail the exact treatment process used by the beauty parlor.

vices such as electrically heated curlers or rods and heat-generated machines—involve less complicated processes used with familiar and historic heat-induced or electrical devices such as curling irons, rather than the more recently manufactured, less well known and structurally complex chemical hair relaxers. Lay persons historically have had common knowledge regarding the effects of heat generated by electrical devices and wood or coal heated equipment, but little or no common knowledge concerning the effects of chemical substances applied to the hair or scalp. Through the centuries and years, children have learned at an early age that heated devices may burn and cause damage to the body if touched in the wrong way. This knowledge has carried over into adulthood for eons. Thus, in the early 1930s and 1940s permanent wave cases involving heated devices and machines, the appellants focused mainly on showing actual damages in the form of burns and blisters because of "a widespread consensus of a common understanding," *Hailey, supra,* 636 A.2d at 428, that improper application of heat devices and machines to the body may produce burns.

The later permanent wave cases in our second and third categories which involved the use of chemical solutions and compounds and which arose in the decades of the fifties, sixties and seventies, required a greater evidentiary foundation before courts accepted the *res ipsa loquitur* doctrine as an aid to proving negligence. Undoubtedly this greater evidentiary foundation was required because children and adults, even today, do not generally expect liquid solutions or creams contained in a jar to burn when applied to the body. Unlike the cases pertaining to the use of electrical or other heat-induced devices and machines, lay persons do not have common knowledge about the effects of chemical solutions, including hair relaxers. Therefore, the appellants in our second and third categories of permanent wave cases did not resort solely to a "common knowledge" argument with respect to the application of the *res ipsa loquitur* doctrine. Rather, as indicated below, they introduced expert opinion to show that their injuries ordinarily would not occur in the absence of negligence.

In *Smith v. Kennedy,* 43 Ala.App. 554, 195 So.2d 820, 825 (1966), a cold wave permanent liquid solution case on which Ms. Scott places heavy reliance, the appellant presented expert testimony from a hair stylist as to the standard of care and procedure in applying the waving solution. In addition, a hospital emergency room physician testified that when he saw the appellant, "[s]he was suffering from 'second degree chemical burns of the neck, completely around and extend[ing] from the hairline to the shoulder on the sides posterily and from the chin to the clavicle, anteriorily....'" *Id.* at 824. The appellant in *Horton v. Seligman & Latz, Inc.,* 260 So.2d 731, 733 (La.App.1972), a machineless permanent wave case in which a conditioner and wave solution were applied, presented testimony from an expert cosmetologist that her "dry, brittle hair was caused by an over-processed permanent wave." In *Traylor v. Fair,* 101 Ill. App.2d 268, 243 N.E.2d 300, 302 (1968), a machineless cold wave permanent case, a doctor testified that he treated the appellant for a chemical burn and that "sufficient information [was related to him by the plaintiff] to conclude that the solution created a chemical burn of her scalp." In addition to testimony from a beauty shop owner that one of his beauticians apparently left a too strong cold wave permanent solution on too long, the appellant in *Weiss v. Axler,* 137 Colo. 544, 328 P.2d 88, 91 (1958), presented testimony from doctors that "her hair was damaged as a result of the wave application .... [and] that the hair damage was not traceable to her physical condition or to an allergy."

Only after "a careful review of the evidence" did the appellate court in *Sheppard v. Travelers Ins. Co.,* 333 So.2d 342 (La. App.1976), a bleach treatment case, deter-

mine that the doctrine of *res ipsa loquitur* should have been applied. The evidence included testimony from an expert cosmetologist for the appellant who stated that the "overlapping" process used by the beautician "will almost invariably cause breakage." *Id.* at 345. In short, these four machineless cold wave permanent and bleach treatment cases reveal an "evidentiary foundation on which to predicate intelligent deliberation," *Twyman, supra,* 655 A.2d at 852, and to meet the first element of the *res ipsa loquitur* doctrine: "[the occurrence is] of the kind which ordinarily does not occur in the absence of someone's negligence," *Hailey, supra,* 636 A.2d at 428. The same cannot be said of Ms. Scott's case.[11]

Ms. Scott contends, in essence, that lay persons have common knowledge concerning the application of chemical hair relaxers. That contention has no support either in the record on appeal or in the permanent wave cases where chemical solutions and compounds were used. A machineless chemical hair relaxer was used on Ms. Scott. The purpose of a hair relaxer is to "break chemical bonds in the hair and alter the structure," thereby producing a "straightening effect which usually lasts until new hair grows out." Michael R. Flaherty, Annotation, *Products Liability: Hair Straighteners and Relaxants,* 84 A.L.R.4th 1090, 1093 (1991). Hair relaxers "generally contain one of the following active ingredients: sodium hydroxide, ammonium or sodium bisulfite, or thioglycolate."

*Id.* Lay persons simply do not have common knowledge either of hair relaxers or the chemical content of such products. Certainly there is no "widespread consensus of a common understanding" that hair damage does not "ordinarily occur [after the use of hair relaxers] without negligence." *Hailey, supra,* 636 A.2d at 428. No "expert testimony [was] presented [in this case demonstrating] that such accidents d[o] not occur in the absence of negligence." *Id.* Moreover, in Ms. Scott's case, neither the judge nor the jurors had any hint as to the chemical composition of the relaxer, the actual process used to apply the chemical relaxer or the proper procedure for putting the relaxer onto Ms. Scott's hair or scalp.[12] As the trial court properly ruled, it was incumbent upon Ms. Scott to present expert evidence as to the standard of care and process for application of the hair relaxer used on her scalp or hair.

The mere fact that Ms. Scott may have experienced dry hair that broke off after her treatment is insufficient in and of itself to invoke the *res ipsa loquitur* doctrine. As the court in *Weiss, supra,* stated:

"It is not alone the injury ... but the manner and circumstances thereof, that give rise to the presumption [of negligence under *res ipsa loquitur*]. In such cases the *res* includes the attending circumstances, and the application of the rule of *res ipsa loquitur* involves principally the question and sufficiency of cir-

---

**11.** Four other cases should be mentioned. In *Morrison v. Steppe's Beauticians, Inc.,* 95 Ohio App. 1, 115 N.E.2d 868, 869 (1953), apparently a machineless permanent wave solution case, expert testimony was given concerning the proper procedure for applying a permanent wave solution and the "normal and usual method to protect the scalp from the heat." In addition, actual damage was shown in the form of third degree neck burns. Expert cosmetology testimony was presented in *Bush v. Bookter,* 47 So.2d 77 (La.App.1950), a permanent rinse solution case, as well as testimony concerning painful scalp burns. The appellant in *Epps v. Ragsdale,* 429 S.W.2d 798, 800 (Mo.App.1968), a permanent wave compound solution case in which a Commissioner's opinion was adopted per curiam, offered testimony regarding medical treatment for scalp burns and nervousness and "[h]ypothetical medical opinion ... that the permanent wave had caused both these conditions and the loss of hair ." Finally, although Ms. Scott cites *Galbraith v. Smith,* 120 N.J.L. 515, 1 A.2d 34 (1938), a permanent wave case, the injuries there were caused by a falling chandelier.

**12.** Ms. Scott did not include a product's liability count in her complaint. See *Payne v. Soft Sheen Products, Inc.,* 486 A.2d 712 (D.C. 1985).

cumstantial evidence to justify the jury in inferring the existence of the principal fact in issue—the defendant's negligence."

328 P.2d at 93 (quoting *Colorado Springs & Interurban Ry. Co. v. Reese*, 69 Colo. 1, 169 P. 572, 575 (1917) (en banc)). Indeed, as the court in *Ravo, supra*, said: "The doctrine [of *res ipsa loquitur*] 'is not intended to relieve one party or the other of the expense of producing proof....'" 236 N.Y.S.2d at 139.

 In short, in this case, Ms. Scott produced no expert cosmetology testimony as to the nature and chemical content of the relaxer used or its exact method of application; nor did she present medical testimony as to the type of injury she sustained during her treatment. In fact, she admitted during cross-examination that she did not seek medical attention until some two years after her 1992 treatment. The doctor whom she saw in 1994, Dr. Eileen Blum, prescribed medication for a dry skin condition which Ms. Scott applied to her hands. Although Ms. Scott saw another cosmetologist, Ms. Diane Broadus, no testimony from her was presented at trial. In addition to testimony by Ms. Scott, the only other witness in her behalf was her then roommate who stated, without explanation, that Ms. Scott's hair was "a mess" when she returned from her hair relaxer treatment. This testimony from Ms. Scott and her witness falls far short of the evidentiary foundation discussed above in which courts allowed the *res ipsa loquitur* presumption to be invoked. Had this case gone to the jury, jurors would have been left to speculate concerning key factual elements of the case, and to pile inference upon inference. Thus, contrary to the position of our dissenting colleague, we are constrained to conclude that Ms. Scott has not satisfied the first prong of the *res ipsa loquitur* doctrine—"[the occurrence is] of the kind which ordinarily does not occur in the absence of someone's negligence"—*Hailey, supra*, 636 A.2d at 428, and thus, this case is not appropriate for the application of the *res ipsa loquitur* doctrine.

Accordingly, for the foregoing reasons we affirm the judgment of the trial court.

*So ordered.*

SCHWELB, Associate Judge, dissenting:

In my opinion, the evidence presented by the plaintiff, viewed in the light most favorable to her, was sufficient to present a jury question under the doctrine of *res ipsa loquitur*. I am therefore unable to join in my colleagues' decision to affirm the trial judge's direction of a verdict in the defendants' favor.

### I.

On May 22, 1992, the plaintiff, Doris Scott, went to Edna's Beauty Salon, which is owned by the defendant Edna James, and requested a "hair relaxer" treatment. The treatment was provided by Ms. James' codefendant, Sylvia Summer, who was employed at the salon. Ms. Scott testified that "before [Ms. Summer] could get half way done, it started to burn." Ms. Summer reassured Ms. Scott that "it will be OK," but, according to Ms. Scott, this assurance proved to be premature. Although her scalp briefly "stopped burning as much," it started burning all over again when Ms. Summer began to blow-dry Ms. Scott's hair. In Ms. Scott's words, "[i]t felt like little pins were sticking in my head."

After Ms. Scott's hair was dry, Ms. Summer began to cut it short in order to remove what Ms. Summer characterized as the "damaged portion." Altogether, Ms. Summer removed "maybe three or four inches all the way around." Ms. Scott testified that when she came to the salon, her hair came down to her shoulders, and she had not been planning to have it shortened.

A few hours after Ms. Scott left the establishment, her hair began to "dry out and get brittle and it started to shed."

Within a couple of weeks, the condition of her hair had further deteriorated, and it "continued to shed and break and it was coming out in clumps." Ms. Scott related that she was forced to purchase wigs and "tracks" of human hair to cover the damaged areas. Later, Ms. Scott decided to have her hair "weaved" and "braided." Ms. Scott testified that prior to her visit to Edna's Hair Salon, she neither used nor wished to use any of these styles or devices. It was not until Ms. Scott had all of her hair cut "really short" that her hair grew back healthy.

Ms. Scott testified that she relied entirely on the defendants in relation to the use of the hair relaxer. When she came to the salon, she asked Ms. Summer if it was safe to apply this treatment in light of the fact that Ms. Scott was "coming out of [a] geri curl." The following colloquy ensued during cross-examination:

> Q. And you knew, did you not, Ms. Scott, that there was a little bit of risk with any hair care product including a relaxer?

> A. No. I didn't really know that. That's why I went to a professional.

## II.

### LEGAL DISCUSSION

A. *Standard of review.*

In reviewing an order directing a verdict in favor of the defendants, we view the evidence in the light most favorable to the plaintiff, and this court, like the trial judge, must credit the testimony introduced by the plaintiff and must draw all reasonable inferences in her favor. *See, e.g., Phillips v. District of Columbia,* 714 A.2d 768, 772 (D.C.1998). "Whether the evidence, viewed in the light most favorable to [Ms. Scott], was sufficient to go to the jury is a question of law, which we consider *de novo.*" *Id.* (citations omitted).

B. *The applicability of res ipsa loquitur.*

In order to invoke the doctrine of *res ipsa loquitur,* the plaintiff must establish that "(1) [the] event would not ordinarily occur in the absence of negligence; (2) the event was caused by an instrumentality in defendant's exclusive control; and (3) there was no voluntary action or contribution on plaintiff's part." *District of Columbia v. Billingsley,* 667 A.2d 837, 841 (D.C.1995). Whether this doctrine may properly be applied where, as in this case, a patron of a beauty salon claims that she has been injured as a result of treatment that she has received there, appears to be a question of first impression in the District of Columbia. There is, however, substantial case law on the subject in other jurisdictions, and the weight of authority strongly supports Ms. Scott's position:

> Where plaintiffs have sought to recover damages for injuries which they allegedly sustained as patrons of beauty salons, the doctrine of *res ipsa loquitur* has been held applicable in numerous cases, the courts often emphasizing that the particular circumstances proved by the plaintiff constituted sufficient evidence (1) that the plaintiff's injuries were caused by what happened in the defendant's beauty salon, rather than by some other cause; (2) that the beauty salon or its employees had exclusive control of the instrumentality which caused the injuries; and (3) that such injuries as the plaintiff sustained do not ordinarily occur in the absence of negligence. Thus it has been held in various cases that under the particular circumstances involved, the doctrine of *res ipsa loquitur* was applicable where the plaintiff allegedly sustained such injuries as (1) scalp burns or loss of hair as a result of a permanent wave administered by means of electrical heat at the defendant's beauty salon, or (2) burns, loss of hair, or dermatitis as a result of a cold wave permanent administered by means of a waving lotion at the defendant's beauty salon, or (3) scalp pain or loss of

hair as a result of having hair bleached at the defendant's beauty salon, or (4) facial injuries following treatment at the defendant's beauty salon for removal of superfluous facial hair, or (5) having hair change to an undesired color following treatment in the defendant's beauty salon. . . .

Timothy M. Hall, Annotation, *Res Ipsa Loquitur—Beauty Salon Patron,* 93 A.L.R.3d 897, 900 (1979); *see also* 11 AM. JUR.2D *Barbers and Cosmetologists* § 24, at 309 & nn. 34 & 35 (1997), and authorities there cited.

The principles summarized above are set forth in numerous decisions from various jurisdictions collected in the annotation. *See, e.g., Glossip v. Kelly,* 228 Mo.App. 392, 67 S.W.2d 513, 515–16 (1934) (Commissioner's opinion adopted *per curiam* ); *Epps v. Ragsdale,* 429 S.W.2d 798, 800–01 (Mo.Ct.App.1968) (Commissioner's opinion adopted *per curiam* ); *Morrison v. Steppe's Beauticians Inc.,* 95 Ohio App. 1, 115 N.E.2d 868, 870 (1953); *Traylor v. The Fair,* 101 Ill.App.2d 268, 243 N.E.2d 300, 303–04 (1968). In my opinion, this court should follow the approach adopted in these cases.

C. *The sufficiency of the evidence.*

Viewing the record in the light most favorable to Ms. Scott, I entertain no doubt that she has satisfied the second and third elements of *res ipsa loquitur* as set forth in *Billingsley, supra,* 667 A.2d at 841. If Ms. Scott's testimony is credited, as it must be for purposes of the motion for a directed verdict, then her injuries—a burning scalp and the subsequent loss of hair—were sustained during and immediately after the treatment provided by the defendants. Ms. Scott did not suffer from these conditions before she came to Edna's Beauty Salon. Under these circumstances, an impartial trier of fact could reasonably decline to attribute this sequence of events to coincidence, *see, e.g., Poulnot v. District of Columbia,* 608 A.2d 134, 139 (D.C.1992), and could reasonably find that Ms. Scott's injuries were caused by an instrumentality under the exclusive control of the defendants. Similarly, a reasonable juror would not be compelled to believe, on this evidence, that Ms. Scott contributed to these injuries.

There remains the question whether Ms. Scott has satisfied *Billingsley's* first prong, namely, that the injuries she sustained do not ordinarily occur in the absence of negligence. In my opinion, at least at the directed verdict stage, that question must be answered in the affirmative.

In *Epps v. Ragsdale, supra,* the plaintiff suffered scalp burns and loss of hair after she received a permanent wave at the defendant's beauty shop. She presented no expert testimony regarding the standard of care, nor did she identify any specific act of negligence on the part of the defendant. On those facts, which are similar to the present record, the court sustained the plaintiff's invocation of the doctrine of *res ipsa loquitur,* as follows:

Courts have said, on different but similar facts, that permanent waves do not ordinarily cause scalp burns and hair loss when carefully applied by a beautician. . . . In those cases the plaintiffs, injured by permanent wave treatments, properly submitted on *res ipsa loquitur.* Logic compels the same result here. It is common knowledge that many women have permanent wave treatments without damage to their scalps or hair; it is also commonly known that human hair and scalps are sensitive to caustic compounds and to heat. *These two commonly known facts lead to a third: permanent wave treatments do not ordinarily cause scalp burns and hair loss of the severity shown here if carefully performed by a beautician.* This fact, plus the defendant's exclusive control and superior knowledge, satisfies the "doctrine of probabilities" to the extent that the trial court did not err by permitting the jury,

if it was so persuaded, to infer negligence from the facts of the occurrence.

429 S.W.2d at 800–01 (emphasis added) (citations omitted).[1]

In *Glossip v. Kelly, supra,* another case in which the plaintiff suffered burns as a result of a permanent wave treatment administered by the defendant, the court held that the doctrine of *res ipsa loquitur* was applicable:

> The evidence in this case shows that the plaintiff knew nothing about the means and processes or the instrumentalities employed in administering a permanent wave of her hair. The instrumentalities and appliances in the processes of administering the same, the manner in which they were used and applied, or other means and agencies employed were all peculiarly under the control and within the knowledge of the defendant and his servants and were such as to require special skill on the part of the operator.
>
> That accident or injury of the character complained of does not ordinarily occur to the party obtaining the wave from the use of the instrumentalities and appliances used and the manner, methods, and processes employed in their application where proper care is used is abundantly shown by the evidence; *and such fact, therefore, is sufficient for an inference where injury does occur that it was occasioned by reason of some imperfection in such instrumentalities or appliances or from some fault upon the part of the defendant or his employees in the use of the same or other agencies, processes, or methods employed and casts upon defendant the burden of exculpating himself from fault.*
>
> It, therefore, appears that this case, under the record, is within the doctrine of *res ipsa loquitur* and the principles applicable thereto.

67 S.W.2d at 516 (emphasis added); *see also Morrison, supra,* 115 N.E.2d at 870; *Traylor, supra,* 243 N.E.2d at 303.

Concededly, none of the cases cited above deals specifically with hair relaxers. This distinction, however, is not decisive. "The applicability of the doctrine of *res ipsa loquitur* in cases involving injuries resulting from beauty treatment does not depend on the type of treatment in question." 39 Am.Jur. Proof of Facts 2d *Negligent Beautician* § 9, at 450 (1984). "The kinds of treatments that have given rise to the use of the doctrine span virtually the entire gamut of services provided by beauty salons, ranging from permanents and hair coloring or bleaching to electrolysis and other procedures for the removal of superfluous hair." *Id.* (footnotes omitted). I am aware of no persuasive reason why a different analysis should apply to hair relaxer treatments.

According to my colleagues in the majority, the present case differs from those in which *res ipsa loquitur* has been applied in that lay persons are familiar with permanent wave treatments utilizing "familiar and historic heat-induced or electrical devices such as curling irons," Maj. op. at 405, but not with chemical hair relaxers or straighteners.[2] I am not at all sure that this is so,[3] but even assuming the correct-

1. The majority points out that, in *Epps,* there was "[h]ypothetical" medical opinion to the effect that the treatment had caused the plaintiff's injury. 429 S.W.2d at 800. This "hypothetical" opinion, however, went to the question of causation, not to the standard of care. In the present case, the sequence of events precluded the direction of a verdict on the issue of causation.

2. *I find it revealing that,* while attempting to distinguish Ms. Scott's authorities, my colleagues have cited *no* case involving injuries to a patron of a beauty salon, in which a court has ruled, under circumstances such as these here, that *res ipsa loquitur* does not apply.

3. There are surely many members of the general public whose knowledge of permanent wave technology (whether heat-induced, electrically administered, or chemically activated) is no greater than their comprehension of hair relaxer methodology.

ness of the majority's proposition, it does not determine the applicability of *res ipsa loquitur*. The result in cases like *Epps* and *Glossip* and others cited in the Annotation did not turn on whether a lay juror would be familiar with the processes utilized by the defendant in treating the plaintiff's hair. Rather, the courts recognized that the customer who goes to a beauty salon, and who relies on the beautician's expertise, does not ordinarily suffer burns or hair loss if the beautician has exercised due care in carrying out her duties. If the customer does suffer such an injury, then the relevant facts are peculiarly within the beautician's knowledge, and the burden shifts to her to rebut the inference of negligence arising from this unusual occurrence.[4]

In my opinion, the viability of Ms. Scott's case does not turn on whether she has shown that "lay persons have common knowledge concerning the application of chemical hair relaxers." Maj. op. at 406. Courts have permitted juries to find that an accident would not ordinarily occur in the absence of negligence even where a lay juror could not be expected to be familiar with the technology involved. In *Slaughter v. District of Columbia Transit Sys.*, 104 U.S.App.D.C. 275, 261 F.2d 741 (1958), for example, the rear door of a bus closed on the minor plaintiff's foot as she was endeavoring to alight, injuring her ankle. The plaintiff sued the carrier, but she offered no expert testimony at trial identifying a specific defect or negligent act or omission. The trial judge directed a verdict for the carrier, but the Court of Appeals reversed. In an opinion by Judge (later Chief Justice) Burger, the appellate court concluded that the doctrine of *res ipsa loquitur* was applicable to the case. In the court's view, a jury could reasonably find that "some negligence of appellee

was the proximate cause of appellant's injury." 104 U.S.App.D.C. at 277, 261 F.2d at 743. Obviously, the average lay juror cannot be expected to know what has gone wrong with the machinery controlling a bus door, and the court's application in *Slaughter* of *res ipsa loquitur* demonstrates that no such knowledge is required in order to satisfy the first element of that doctrine.

As I see it, the result reached in *Epps, Glossip,* and similar cases comports with common sense and justice. A customer who goes to a beauty salon, whether for a permanent wave or for a hair relaxer treatment, can reasonably expect that she will not lose her hair as a result. When a client's long hair is suddenly "damaged" and cut, and when clumps of it leave her head forever, then it is surely the professionals, rather than the customer, who have ready access to the facts that will illuminate the cause of the plaintiff's injury. In such circumstances, it is appropriate to require an explanation from "the person who wishes to support [her] case by a particular fact which lies more peculiarly within [her] knowledge, or of which [she] is supposed to be cognizant." *Selma, Rome, & Dalton R.R. v. United States,* 139 U.S. 560, 568, 11 S.Ct. 638, 35 L.Ed. 266 (1891) (citations omitted); *see also Browzin v. Catholic Univ. of America,* 174 U.S.App. D.C. 60, 66 n. 12, 527 F.2d 843, 849 n. 12 (1975) (citation omitted). To compel the plaintiff, on this record, to retain an expert witness in order to litigate her claim seems to me to make the vindication of her rights unnecessarily, and perhaps prohibitively, expensive. I discern no injustice at all, on the other hand, in requiring an explanation from the defendants of the unfortunate events that allegedly followed their treatment of Ms. Scott.[5]

---

4. In light of the defendant's "exclusive control and superior knowledge," *Epps, supra,* 429 S.W.2d at 801, Ms. Scott's failure to name the chemical product used by Ms. Summer appears to me to be irrelevant to the applicability of *res ipsa loquitur.*

5. In his opening statement, counsel for the defendants outlined a factual scenario dramatically different from that depicted by Ms. Scott. Because the trial judge directed a verdict in favor of the defendants, however, the

In my opinion, defendants' motion for a directed verdict should have been denied.[6] Accordingly, I respectfully dissent.

---

defense version was never presented to the jury.

6. Ms. James admits in her answer that she is the owner of Edna's Beauty Salon. It is undisputed that Ms. Summer was the person who treated Ms. Scott at that establishment, and she was thus held out to be part of the salon's operation. In fact, the attorney for both defendants referred to Ms. Scott in his opening statement as Ms. James' customer. In my opinion, this reference amounted to a judicial admission that Ms. James was responsible for any negligence on the part of Ms. Summer, and there was therefore no ba-

sis for directing a verdict in Ms. James' favor on the grounds that Ms. James was not the person who treated Ms. Scott and that she was not vicariously liable. It is undisputed that Ms. Summer's work at Edna's Beauty Salon was "a part of [Ms. James'] regular business," and Ms. James "should be required to bear the costs fairly incidental to [her] enterprise; that is, [s]he should be charged with the risks arising out of the operation of [her] business." 5 FOWLER V. HARPER & FLEMING JAMES, JR., THE LAW OF TORTS § 26.11, at 73 & n. 25 (2d ed.1986) (citations omitted).